IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-01705-LTB-KLM

GREGORY E.  LINDSEY,

      Applicant,

v.

AL ESTEP, and
COLORADO ATTORNEY GENERAL,

      Respondents.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX

      Before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 2; Filed August 17, 2004] filed by Gregory E. Lindsey ("Applicant").   Respondents filed an Answer Brief objecting to the Application on September 30, 2004 [Docket No. 8].  Applicant filed a Traverse to Respondent's Answer Brief on December 1, 2004 [Docket 12].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, this matter has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution.   For reasons set forth below, the Court recommends that the Application be **denied**.

## I.  Background

      Applicant challenges two different state court convictions.   In January 1989, Applicant was convicted by a jury in the El Paso County District Court, Colorado, of second-degree burglary, first-degree attempted sexual assault, and four counts of habitual

criminality ("Conviction 1"). Application at 2 [Docket No. 2]. Conviction 1 involved the May 1988 sexual assault and burglary of Victim 1. Answer Brief at 3 [Docket No. 8]. In March 1990, Applicant was also convicted by an El Paso County District Court jury of second-degree burglary, first-degree sexual assault, robbery, and three counts of habitual burglary and criminality ("Conviction 2"). Application at 2 [Docket No. 2]. Conviction 2 involved the February 1988 sexual assault, burglary, and robbery of Victim 2. Answer Brief at 5 [Docket No. 8]. Applicant was sentenced to two life-terms of imprisonment. Application at 2 [Docket No. 2]. Applicant is currently in the custody of the Colorado Department of Corrections at the Limon Correctional Facility.

The facts giving rise to Conviction 1 are the following. In January 1988, Applicant sexually assaulted Victim 1 in her home and left semen behind. Answer Brief at 3-4 [Docket No. 8]. He was not apprehended at this time, and returned in May 1988 and attempted to sexually assault Victim 1 again. During the attempted assault, Applicant spoke to Victim 1 about his January 1988 rape of her. This time, Victim 1's neighbor interrupted the assault, and Applicant fled. Later that evening, he was identified and arrested. Applicant was not charged with the January 1988 assault, and the prosecution proceeded against Applicant for the attempted assault and burglary of Victim 1 that occurred in May 1988. However, the prosecution used the January 1988 sexual assault as evidence of a prior similar criminal act and admitted DNA evidence from that earlier attack. Applicant was convicted of attempted assault, burglary, and being an habitual criminal.

The facts giving rise to Conviction 2 are the following. *Id.* at 5. In February 1988,

Applicant sexually assaulted Victim 2 in her home and left semen behind. The DNA evidence derived from that assault was used as evidence against Applicant. Applicant was convicted of sexual assault, burglary, robbery, and being a habitual burglar and criminal.

Applicant appealed Conviction 1 on the grounds that he was not properly advised of his right to testify pursuant to state law and his conviction for being an habitual criminal was unconstitutional. *Id.* at 4-5. The Colorado Court of Appeals upheld Conviction 1 on September 27, 1990. *People v. Lindsey*, No. 89CA0340 (Colo. Ct. App. Sept. 27, 1990) (unpublished decision) (*Lindsey I*). Applicant appealed Conviction 2 on the grounds that the DNA evidence used to convict him was inadmissible. The Colorado Court of Appeals upheld Conviction 2 on January 7, 1993. *People v. Lindsey*, 868 P.2d 1085 (Colo. Ct. App. 1993) (*Lindsey II*). The Colorado Supreme Court affirmed Conviction 2 on March 6, 1995. *Lindsey v. People*, 892 P.2d 281 (Colo. 1995) (*Lindsey III*).

Applicant also pursued postconviction relief. Answer Brief at 5 [Docket No. 8]. He filed a motion to correct an illegal sentence pursuant to Colo. R. Crim. P. 35(a) regarding the sentence of life imprisonment he was serving for Conviction 1. The motion was denied. On appeal, the Colorado Court of Appeals considered three issues raised by Applicant: (1) the constitutionality of the habitual criminal statute; (2) whether the habitual criminal statute violated state law; and (3) whether Applicant was constitutionally entitled to a proportionality review of his sentence resulting from Conviction 1. Applicant's conviction was affirmed by the Colorado Court of Appeals, but the court agreed that Applicant was entitled to a proportionality review of his sentence. *People v. Lindsey*, No. 93CA1545, slip op. at 5 (Colo. Ct. App. July 27, 1995) (unpublished decision) (*Lindsey IV*).

The court conducted an abbreviated proportionality review and determined there was no sentencing error. *Id.* at 5-7.

Applicant filed a final motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c) arguing that Conviction 1 should be overturned due to the ineffective assistance of his trial counsel in failing to challenge the DNA evidence presented against him at trial. Answer Brief at 5-6 [Docket No. 8]. He also alleged that Convictions 1 and 2 should be overturned due to the ineffective assistance of his counsel at both trials in failing to properly advise him of his right to testify pursuant to state law. The motion was denied. On appeal, the Colorado Court of Appeals affirmed. *People v. Lindsey*, No. 02CA0541 (Colo. Ct. App. Aug. 28, 2003) (unpublished decision) (*Lindsey V*).

On August 17, 2004, Applicant filed the current action. The Application raises six claims.

| | |
|---|---|
| Claim I | Applicant was not properly advised of his right to testify in violation of the Fifth and Fourteenth Amendments (Conviction 1). |
| Claim II | Applicant's habitual criminal conviction violated due process pursuant to the Fourteenth Amendment (Conviction 1). |
| Claim III | DNA evidence presented was inadmissable and violated due process (Conviction 2). |
| Claim IV | Applicant was deprived of an extended proportionality review of his life sentence in violation of the Eighth and Fourteenth Amendments (Conviction 1). |
| Claim V | Applicant's counsel's failure to object to the admission of DNA |

evidence resulted in ineffective assistance in violation of the Sixth
Amendment (Conviction 1).

Claim VI    Applicant was not properly advised of his right to testify in violation of
the Fifth and Fourteenth Amendments and State procedural
requirements (Conviction 1).[1]

## II.  Preliminary Matters

### A.    Applicant's Status

Applicant is proceeding *pro se.*  Therefore, the Court must construe his Application
liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106,
1110 (10th Cir. 1991).   In this regard, the Court should carefully weigh the need for
Applicant to present constitutional claims against any procedural defects caused by
Applicant's *pro se* status.   *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).
However, the Court is not the nonmoving party's advocate and must nevertheless deny an
application that is based on vague or conclusory allegations.  *Hall*, 935 F.3d at 1110.

### B.    Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be
granted only if it is based on an underlying state court decision that (1) is "contrary to . .
. clearly established Federal law, as determined by the Supreme Court, or (2) involved an

---

[1] Claims I and VI appear to allege the same injury regarding the trial court's
alleged failure to properly advise Applicant of his right to testify.  In his Traverse,
Applicant attempts to reclassify Claim VI as one alleging ineffective assistance of
appellate counsel, however, he fails to offer any argument in this regard, and the Court
notes that the Application only asserts violations pursuant to the Fifth and Fourteenth
Amendments in relation to Claim VI.  As such, the Court analyzes Claims I and VI
under the same standard.

unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, a presumption of correctness exists regarding trial and appellate court findings of fact pursuant to this Court's habeas review. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

C.    Exhaustion of Claims

As a threshold matter, Respondents argue that Applicant failed to exhaust Claims I and VI as they pertain to whether the advisement of the right to testify that Applicant received pursuant to Conviction 1 violated any federal constitutional provisions. Answer Brief at 12 [Docket No. 8]. While Applicant challenged the advisement he received on

appeal, he did so based upon an alleged violation of state law, not federal law. Brief of Defendant-Appellant at 4-7, *Lindsey I* (filed Jan. 16, 1990). As such, Respondents argue that he is barred from pursuing Claims I and VI herein.

"The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). The state and federal courts have concurrent power to "guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citation omitted). As such, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950), *overruled on other grounds by Fay v. Noia*, 372 U.S. 391 (1963).

Applicant essentially argues that it was enough for him to raise the issue of his trial advisement to some degree at the state court level. Traverse at 3-4 [Docket No. 12]. He claims that he was not also required to raise the issue of a violation of a federal right in order to exhaust and pursue such a violation with the federal court. I disagree. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas [applicant] wishes to claim that [a] ruling at a state court trial denied him [of a constitutional right], he must say so, not only in federal court, but in state court."). Applicant did not afford the state court an opportunity to pass judgment on whether the advisement of the right to testify violated his federal constitutional rights. As such, he failed to exhaust these claims. On the one hand, Applicant suggests that should the Court deem these claims to be unexhausted, he should

be allowed to return to state court and pursue these claims therein. Traverse at 4 [Docket No. 12]. On the other hand, Applicant acknowledges that such a course would be futile as he has no remaining opportunities to attack his sentence and conviction at the state court level. *Id.* Given the futility, he asks the Court to treat these claims as exhausted and consider them on the merits. *Id.*

Applicant is mistaken that his failure to raise a claim at the state court level, and his subsequent procedural bar from pursuing further claims at that level, should be deemed as exhaustion for this Court's purposes. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Were such the law, Applicant could effectively bypass the state court altogether. However, that is not the law, and "a state court prisoner may initiate a federal habeas petition '*only* if the state courts have had the first opportunity to hear the claim sought to be vindicated.'" *Vasquez*, 474 U.S. at 257 (emphasis added) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)).[2] Accordingly, Applicant's failure to exhaust Claims I and VI necessitates their denial.

Respondents also argue that Applicant failed to exhaust Claim III as it relates to the admission of DNA evidence at the trial resulting in Conviction 2. Answer Brief at 20

---

[2] Alternatively, in his Traverse, Applicant suggests that he should be allowed to assert an ineffective assistance claim against his appellate counsel for his failure to bring this constitutional challenge. Traverse at 6 [Docket No. 12]. He did not raise a claim regarding this issue in his Application and did not exhaust it at the state court level. *See infra* p. 8-10. In addition, to the extent that Applicant suggests he would also like to assert a claim of ineffective assistance of postconviction counsel, see Traverse at 5 [Docket No. 12], this claim is denied summarily. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

[Docket No. 8]. Applicant contends that the admission of this evidence violated due process, presumably pursuant to the Fourteenth Amendment. Application at 6 [Docket No. 2]. However, his challenge of this evidence in the state appellate courts was limited to whether the evidence was admissible pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923),[3] and he did not assert that admission of the evidence was a constitutional violation. *See* Brief of Petitioner, *Lindsey III* (filed May 11, 1994); Reply Brief of Petitioner, *Lindsey III* (filed Sept. 16, 1994).

Applicant does not dispute that the constitutionality of the admission of DNA evidence was not presented to the state appellate courts. *See* Traverse at 14 [Docket No. 12]. Rather, he asks the Court to forgive the lack of exhaustion because his appellate counsel was ineffective due to his failure to assert this constitutional argument. *Id.* Applicant generally claims that his counsel's ineffective assistance should be treated as the "absence of available State corrective process" pursuant to 28 U.S.C. § 2254(b)(1)(B), such that his failure to exhaust should be excused. *See id.* at 6.

While appellate counsel's ineffective assistance can constitute "cause" sufficient to excuse a state prisoner's failure to exhaust, that allegation must first be presented to the state courts as an independent claim prior to Applicant asserting it here. *Murray*, 477 U.S. at 488-89.

_____

[3] *Frye*, which enunciated a "general acceptance" test for evaluating the admissibility of scientific evidence, was the prevailing legal precedent at the time of Applicant's state court appellate challenge. This holding has now been superceded by Federal Rule of Evidence 702, as recognized by *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 586-90 (1993). *See also Wilson v. Petroleum Wholesale, Inc.*, 904 F. Supp. 1188, 1189 (D. Colo. 1995).

> The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court 'to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

*Id.* at 489 (quoting *Burford*, 339 U.S. at 204); *see also Hume v. McKune*, 176 F. Supp. 2d 1134, 1142 (D. Kan. 2001) (holding that "before 'ineffective assistance of counsel ' may be advanced as cause for the procedural default of another claim, counsel's ineffectiveness must have been presented to the state courts in accordance with state law" (citation omitted)).[4]  Accordingly, Applicant's failure to exhaust Claim III necessitates its denial.

### III. Analysis

#### A. Claims I & VI – Advisement of the Right to Testify (Conviction 1)

As noted above, the Court concludes that Claims I and VI should be dismissed for Applicant's failure to exhaust them at the state court level.  However, out of an abundance of caution given Applicant's *pro se* status, the Court addresses the legal merits of these claims.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust . . . .").

Applicant argues that the advisement of his right to testify was in violation of state law set forth in *People v. Curtis*, 681 P.2d 504 (Colo. 1984), and, consequently, in violation

---

[4] Alternatively, in his Traverse, Applicant suggests that his Application should be stayed to allow him to return to state court and assert claims regarding the constitutionality of his trial advisement and/or ineffective assistance of counsel in relation to Claims I, III, and VI.  Traverse at 5, 14 [Docket No. 12].  The Court declines Applicant's invitation to stay his Application.  Because the Court also recommends that these claims be dismissed on their merits, a stay would be futile.

of federal law.  As a preliminary matter, the Colorado Court of Appeals passed judgment on whether the trial court's advisement satisfied the requirements of *Curtis* and found that the advisement was adequate.  *Lindsey I*, No. 89CA0340, slip op. at 1-5.  The *Curtis* requirements are intended to ensure that defendants knowingly and voluntarily waive this right.  *Curtis*, 681 P.2d at 513-14.  To this end, the State of Colorado specifically requires that the state trial court judge advise the accused of his right to testify, including that if he chooses to testify he will be subject to cross examination regarding prior felony convictions.  *People v. Blehm*, 983 P.2d 779, 786-87 (Colo. 1999).  However, this is a right that exists through state law, and the federal constitution does not necessarily require it.  *See United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983); *Brown v. Artuz*, 124 F.3d 73, 78-79 (2d Cir. 1997); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

Applicant argues that even if the right to a similar *Curtis* advisement does not exist in federal law, a violation of state law can nevertheless amount to a deprivation of due process pursuant to *Hicks v. Oklahoma*, 447 U.S. 343 (1980).  Traverse at 4, 8 [Docket No. 12].  "In order to benefit from the rule in *Hicks*, a habeas petitioner must show that the alleged failure to apply state law was 'arbitrary in the constitutional sense.'" *Dickson v. Franklin*, 130 Fed. Appx. 259, 264 (10th Cir. Apr. 27, 2005) (unpublished decision) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999)).  Moreover, "the deprivation occasioned by the state's failure to follow its own law . . . must shock the judicial conscience."  *Aycox*, 196 F.3d at 1180.

As a preliminary matter, Colorado state courts are only required to substantially comply with *Curtis*.  *People v. Roelker*, 780 P.2d 17, 18-19 (Colo. Ct. App. 1989).

Applicant argues that the trial court did not comply with *Curtis* in two ways: (1) it failed to advise him that if he testified, his prior felony convictions could only be used to attack his credibility; and (2) it failed to advise him that if he testified, his prior felony convictions could not be used against him at the habitual criminal stage of his trial. Traverse at 7 [Docket No. 12].

However, upon review of the record, the Court finds that the trial court did explain to Applicant that evidence of his prior convictions could be presented to the jury to attack his credibility if he chose to testify, and Applicant acknowledged that he did not want to testify for fear that this evidence could be used against him for that purpose. Brief of Plaintiff-Appellee at 2-4, *Lindsey I* (filed May 23, 1989) (quoting Record vol. VI at 648-49).[5]

---

[5] The Court notes that this transcript was not a part of the state court record submitted to the Court [Docket Nos. 16 & 17]. However, the Court "is not required to examine transcripts before disposing of a claim where a habeas petitioner's arguments are 'readily susceptible to resolution without resort to the transcript.'" *Flum v. McKee*, No. Civ. 04-CV-72671-DT, 2005 WL 2319006, at *11 (E.D. Mich. Sept. 2, 2005) (unpublished decision) (quoting *Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991)). Here, the Colorado Court of Appeals analyzed the portion of the transcript in which Applicant was advised of his right to testify and the advisement was quoted verbatim in the appellate brief submitted by Appellee. *Lindsey I*, No. 89CA0340, slip op. at 2-5; Brief of Plaintiff-Appellee at 2-4, *Lindsey I* (filed May 23, 1989). At no time did Applicant challenge the accuracy of the language taken from the transcript on appeal in *Lindsey 1*. A state court record, albeit an incomplete one, is adequate if it provides "the district court with sufficient information to determine" the issue. *Cole v. New Mexico*, 58 Fed. Appx. 825, 828 (10th Cir. Feb. 6, 2003) (unpublished decision). To this end, the Court is entitled to review the entire record before it, including the trial transcripts, the parties' briefs, and the relevant state court decisions, and may use secondary sources in the record to make its determination if necessary. *See Maynard v. Dixon*, 943 F.2d 407, 411 (4th Cir. 1991) (holding that the court could resolve petition without transcript because it was contained in a party's brief which had been certified as true); *David v. Lavinge*, 190 F. Supp. 2d 974, 986 n.5 (E.D. Mich. 2002) (using state appellate court decision in lieu of missing portion of the record where the missing portion was quoted by the appellate court).

Applicant's assertion that the Court did not so inform him has no merit. In addition, to the extent that Applicant argues that *Curtis* required the Court to also advise him that if he chose to testify that testimony could not be used against him in the habitual criminal phase of his trial, this assertion is equally without merit. *Curtis* does not require the court to give this advisement. *See Lindsey I*, No. 89CA0340 slip op. at 3. As such, Applicant failed to show that the trial court violated state law. Even if that were not the case, Applicant has presented no evidence that the trial court's alleged deviation from *Curtis* shocks the judicial conscience.

To summarize, the Colorado Court of Appeals' decision was not contrary to state or federal law nor was it objectively unreasonable. As such, the Court recommends that Applicant's Claims I and VI be denied because (1) Applicant failed to exhaust them; and (2) after reviewing the claims on their merits, Applicant has failed to prove he suffered a constitutional injury.[6]

### B. Claim II – Conviction as an Habitual Criminal (Conviction 1)

Applicant contends that the prior burglary convictions that were used to form the basis for his conviction as an habitual criminal in Conviction 1 were not constitutionally obtained. Application at 6 [Docket No. 2]. As such, Applicant claims that the use of these

---

[6] As noted earlier, in his Traverse, Applicant attempts to convert Claim VI into an ineffective assistance of appellate counsel claim. Because this claim was not exhausted and because he provides no argument as to whether either prong of the *Strickland v. Washington* standard is met, see *infra* Part III.E, the Court does not address this issue. In addition, and giving Applicant the benefit of the liberal interpretation of his pleadings, to the extent that Applicant alleges his trial counsel was ineffective for failing to ensure that he was properly advised of his right to testify, Applicant has also failed to show that his counsel committed error or that he was prejudiced by it.

convictions to support his habitual criminal conviction violated the Fourteenth Amendment. *Id.*

Specifically, Applicant pled guilty to two prior burglary convictions: (1) In 1978, Applicant pled guilty to the crime of grand larceny in the State of Wyoming; and (2) In 1983, Applicant pled guilty to the crime of second-degree burglary. Applicant claims that both pleas were invalid in that he did not enter into them knowingly and voluntarily because the sentencing court failed to advise him of the elements of the offenses to which he pled. *Id.* The Colorado Court of Appeals reviewed this claim and noted that "from the providency records we conclude that [Applicant] understood the critical elements of the charges, and accordingly, his pleas were entered knowingly and voluntarily." *Lindsey I*, No. 89CA0340, slip op. at 6.

The appellate court provided the following description of the sentencing court's advisement in both burglary convictions.

> At [Applicant's] 1983 providency hearing for second degree burglary, the trial court read the information to [Applicant]; [Applicant] questioned the charge, the charge was amended, and then [Applicant] acknowledge the nature of the charge. [Applicant] also made a factual statement that he broke into the house with the intention to take something. Thus, he provided a factual basis which dovetailed with the elements of the offense.

> At the 1978 Wyoming hearing, the information was read to [Applicant] and a rather lengthy discourse transpired between the court and [Applicant] regarding the nature of the charge and [Applicant's] involvement in the offense.

> Therefore, from the providency records we conclude that [Applicant] understood the critical elements of the charges, and accordingly, his pleas were entered knowingly and voluntarily.

*Id.*

As a preliminary matter, while a guilty plea must be made knowingly and voluntarily, *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), it does not necessarily follow that the sentencing court must advise the individual of the elements of the offense. Rather, it is enough if the record demonstrates that the individual understood the nature of the charge. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that even if the judge does not explain the charge or counsel does not represent that he explained the charge, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice").

Here, Applicant was represented by counsel, and the record of each state court's discourse clearly shows that the court described the nature of the offense, including the elements, to Applicant. In regard to the 1983 burglary plea, Applicant and the court engaged in the following exchange:

Court:      Very well. The amended information then charges that on or about March 23, 1983 you did unlawfully, feloniously and knowingly break an entrance into and enter and remain unlawfully in a building and occupied structure, the dwelling of Barbara Ann Troy, located at 2898 Ferber Drive, Colorado Springs, El Paso County, Colorado, with the intent to commit therein the crime of theft.

You understand the nature of the charge against you?

Applicant:  Yes, Your Honor.

.    .    .    .

Court:      You have a constitutional right to silence, but before I accept your plea, I want you to tell me what you did that makes you guilty.

Applicant:  I broke into the house with the intention to take something,

Your Honor.

Answer Brief at 15-16 [Docket No. 8] (quoting Record vol. VII at 25-26, 28).[7]

Applicant contends that had he known the elements of the offense – namely that "Applicant acted knowingly with intent" – he would not have pled guilty. Traverse at 9 [Docket No. 12]. The discourse listed above clearly shows that the court advised Applicant both regarding the element of "knowingly" and the element of "intent." Applicant's assertion to the contrary has no merit. As such, the Court finds that Applicant's guilty plea for the 1983 burglary was not unconstitutional.

In regard to the 1978 burglary conviction, the court and Applicant engaged in a lengthy discussion regarding Applicant's conduct. *Id.* at 17-19 (quoting Record vol. VII at 5-10). Applicant described the incident giving rise to the charge, namely that he went into a jewelry store with the intention to steal rings to get money to buy drugs. He asked to see a tray of rings and then he grabbed them and fled from the store and drove away in a car. The court read Applicant the Information, which included the elements of the charge and

---

[7] Again, the Court notes that this transcript was not a part of the state court record that was submitted to the Court [Docket Nos. 16 & 17]. Here, the Colorado Court of Appeals analyzed the relevant portion of the providency transcript that was quoted verbatim in the appellate brief submitted by Appellee in *Lindsey I*. *Lindsey I*, No. 89CA0340, slip op. at 5-6; Brief of Plaintiff-Appellee at 13-15 (filed May 23, 1989). This portion of the transcript was also reproduced verbatim in Respondent's Answer Brief submitted herein. Answer Brief at 15-17 [Docket No. 8]. At no time did Applicant challenge the accuracy of the language taken from the transcript, either on appeal in *Lindsey I* or in his Traverse submitted herein. The Court finds that Applicant's arguments are "readily susceptible to resolution without resort to the transcript," *Love*, 952 F.2d at 15; *see Cole*, 58 Fed. Appx. at 828; *see also Flum*, 2005 WL 2319006, at *11 (noting that it was appropriate for the court to incorporate the portions of the missing transcript produced verbatim by counsel in a state appellate brief to resolve the application).

the relevant statutes. *Id.* (citing Record vol. VII at 4-5). Thereafter, Applicant entered his guilty plea.

The definition of grand larceny in the State of Wyoming at the time of Applicant's plea was relatively simple. Specifically, Wyo. Stat. Ann. § 6-7-301(1977) identified grand larceny as "[w]hoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of one hundred dollars ($100) or upwards is guilty of grand larceny and shall be imprisoned in the penitentiary not more than ten years."

Again, Applicant argues that had he been advised regarding the elements of "knowingly" and "intent," he would not have pled guilty. However, neither knowledge nor intent is an element of the charge of grand larceny. As such, Applicant's contention that he was entitled to have the Court advise him of these elements is without merit. Further, the record reflects that the information containing this charge was read to Applicant at the time of his plea, Applicant was represented by counsel, and that the plea was entered after consulting with counsel. Answer Brief at 17-20 [Docket No. 8] (quoting and citing Record vol. VII at 4-10). As such, Applicant has not shown that his 1978 plea for grand larceny was unconstitutional.

In summary, the Colorado Court of Appeals held, and I agree, that nothing in the record supports Applicant's contention that the burglary convictions forming the basis for his conviction as an habitual criminal were unconstitutionally obtained. As such, Claim II should be denied.

C. Claim III – Admission of DNA Evidence (Conviction 2)

As noted above, the Court concludes that Claim III should be denied for Applicant's

failure to exhaust the issue at the state court level. However, given Applicant's *pro se* status, the Court addresses the legal merits of this claim. *See* 28 U.S.C. § 2254(b)(2).

Applicant claims that the admission of DNA evidence at his trial resulting in Conviction 2 "should have been excluded . . . because such evidence was not generally accepted by the scientific community at the time it was used." Application at 6 [Docket No. 2]. The DNA evidence gathered in this case was sent to the Cellmark Diagnostic Center (Cellmark) and results were compiled using the Restriction Fragment Length Polymorphism (RFLP) analysis. *Lindsey II*, 868 P.2d at 1086. The Cellmark procedures and resulting RFLP analysis are described at length in *Cobey v. State*, 559 A.2d 391 (Md. App. Ct. 1989). Once the DNA is analyzed, it is compared with a database of other samples to determine its frequency among the human population. "The database used in this case ultimately comprised DNA samples from blood taken from approximately 330 black donors at a Detroit blood bank." *Linsdey II*, 868 P.2d at 1086. The result of Cellmark's analysis was that the DNA found on Victim 2 matched Defendant's DNA to a statistical certainty.

As a preliminary matter, the standard for reversal of a state court's decision regarding admissibility of evidence is fairly limited. As a general rule, federal courts do not pass judgment on state court evidentiary rulings "unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001) (quoting *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989)).

The Court of Appeals in *Lindsey II* reviewed this issue and noted that at the motion

in limine hearing, Applicant "presented a number of witnesses who . . . raised a number of criticisms concerning Cellmark," its database, and the reliability of this evidence. *Lindsey II*, 868 P.2d at 1087; Record vols. 12-14.  The prosecution presented an expert who had done his own analysis independent from Cellmark and who testified that "he was absolutely confident that the frequency of this pattern in the population could be no more common than one in twenty-one million."  *Lindsey II*, 868 P.2d at 1087; Record vol.15 at 16.  In addition, at trial, the Cellmark technician testified regarding her experience in performing nearly 500 similar tests and testifying regarding the results.  *Lindsey II*, 868 P.2d at 1087; Record vol. 17 at 275-307.  She also testified that the frequency of the DNA pattern occurring in the black population was "[o]ne in 340 billion."  Record vol. 17 at 299. Because the case against Applicant was largely circumstantial, the DNA evidence was consequential to Applicant's conviction.  *Lindsey II*, 868 P.2d  at 1088.

As noted above, Applicant contends that the DNA evidence was not "accepted by the scientific community" and, therefore, its admission was a violation of his constitutional right to due process.  Application at 6 [Docket No. 2].  He relies on the testimony of the witnesses who testified on his behalf that the Cellmark analysis was unreliable and its database flawed.  In his Traverse, Applicant also asserts that the Colorado Supreme Court suggested that the issue of admissibility may need to be revisited "if the general view of the scientific community changes."  Traverse at 15 [Docket No. 12].

First, the Court disagrees with Applicant's interpretation of the Colorado Supreme Court's holding.  There, the court noted that the operative consideration was the general view of the scientific community at the time of the evidence's admission, not at the later

time of appellate review or thereafter.  *See Lindsey III*, 892 P.2d 290-91.  "To require

otherwise would compel trial courts to speculate regarding evidence that might be

introduced if the court was privy to future knowledge."  *Id.* at 290 n.25.[8]  Second, at the

time of the admission of the DNA evidence at Applicant's trial (1990), the legal and

scientific precedent in existence indicated that such evidence was generally accepted by

the scientific community.  *See, e.g.*, *State v. Pennington*, 393 S.E.2d 847 (N.C. 1990);

*State v. Schwartz*, 447 N.W.2d 422 (Minn. 1989); *Cobey*, 559 A.2d 391.  Indeed, Applicant

admitted as much in his opening statement.  *Lindsey II*, 868 P.2d at 1088 (noting that

"[Applicant] acknowledged that it is uncontroverted that RFLP analysis has attained

general acceptance in the scientific community").

Applicant alternatively argues that the DNA database employed by Cellmark was

flawed.  However, as the Colorado Court of Appeals noted, "[h]ighly respected authorities

in the areas of genetics and biology testified to the general acceptance and reliability of

DNA fingerprinting" as well as to "the methodology in Cellmark's laboratory."  *Lindsey II*,

868 P.2d at 1091-92.  The Colorado Supreme Court noted the same.  *Lindsey III*, 892

P.2d at 292.  From its own review of the record, the Court agrees with the Colorado

Supreme Court that while the defense presented evidence implicating the reliability of

---

[8] Moreover, were the Court to take Applicant's suggestion and consider the
admissibility of the evidence today, the Court notes that the *Frye* standard for
admission of scientific evidence has now been replaced by the more lenient standard
set forth in Fed. R. Evid. 702.  *See Daubert*, 509 U.S. at 587-89 (noting that the new
standard is a liberal one and that courts are no longer required to determine whether
something is generally accepted to be admissible).  As such, Applicant's suggested
approach would subject him to an even more difficult challenge in proving a
constitutional violation.

Cellmark's database, "[t]he People answered with equally reliable experts." *Id*. Moreover, the mere existence of debate does not generally serve to disqualify the evidence pursuant to the *Frye* test. *See id*.; *see also United States v. Downing*, 753 F.2d 1224, 1236 (3d Cir. 1985) (citations omitted) (noting that general acceptance means prevalent or substantial acceptance, but not necessarily universal acceptance). In addition, regardless of the Cellmark analysis, the prosecution called a witness who independently analyzed the DNA sample taken from Victim 2 and determined to a statistical certainty that the sample belonged to Applicant. Record vol. 15. Applicant does not dispute the independent analyst's findings. As such, from the Court's review of the record, the admission of the DNA evidence was not so fundamentally unfair as to constitute a denial of a constitutional right.

To summarize, Applicant failed to exhaust this claim and is procedurally barred from pursuing it herein. Even if that were not the case, the Colorado Supreme Court's decision was not contrary to federal law or objectively unreasonable. Indeed, the admission of DNA evidence against Applicant did not amount to a constitutional violation, and Claim III should be denied.

D.  Claim IV – Proportionality Review of Sentence (Conviction 1)[9]

---

[9] The Application is unclear as to whether Applicant intends to bring this claim regarding both of his sentences. To the extent that Applicant brings this claim to challenge the life sentences imposed for Convictions 1 and 2, the Court notes that Applicant has only exhausted this issue in relation to the life sentence imposed pursuant to Conviction 1. *See Lindsey IV*, No. 93CA1545, slip op. at 1 (noting that Applicant's request for a proportionality review on appeal was limited to Conviction 1's sentence); Brief of Defendant-Appellant, *Lindsey IV* (filed February 1, 1995). As such, the Court limits its analysis to the life sentence imposed, and the proportionality review given, pursuant to Conviction 1.

Applicant challenges the level of review he was afforded by the Colorado Court of Appeals regarding his life sentence and the finding that it was not grossly disproportionate to the crimes he committed. As a preliminary matter, Applicant is entitled to a proportionality review under both the Eighth Amendment of the United States Constitution and Colo. Const. art II, § 20. *See generally United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006) (recognizing Eighth Amendment application); *People v. Gaskins*, 825 P.2d 30, 34 & n.9 (Colo. 1992) (recognizing Colorado constitutional application). The Court of Appeals conducted an abbreviated review of the sentence imposed pursuant to Conviction 1 and determined that it was not constitutionally disproportionate. *Lindsey IV*, No. 93CA1545, slip op. at 6-7.

The Colorado Court of Appeals noted that "[a]n extended proportionality review is mandated by the Eighth Amendment when the defendant has been sentenced to life imprisonment without the possibility of parole." *Id.* at 6 (citing *Alvarez v. People*, 797 P.2d 37 (Colo. 1990)). However, because Applicant was not serving a life sentence with no possibility of parole, the court determined that only an abbreviated review was required.[10]

---

[10] The prevailing legal precedent on this issue is derived from the Supreme Court's decisions in *Solem v. Helm*, 463 U.S. 277 (1983) and *Harmelin v. Michigan*, 501 U.S. 957 (1991). While the *Solem* Court articulated a three-part test for determining whether a sentence was constitutional – (1) the gravity of the offense vs. the harshness of the penalty, (2) a comparison of the sentence with those given to other criminals within the jurisdiction, (3) and a comparison of the sentence with those given to other criminals outside the jurisdiction, *Solem*, 463 U.S. at 290-92 – that holding was sharply constrained by the Court in *Harmelin* and the consideration is now limited to the first prong in the majority of cases. *Harmelin*, 501 U.S. at 1005 (Kennedy, J. concurring); *see also Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999) (adopting the concurrence as controlling in the Tenth Circuit). Accordingly, the primary concern is whether the sentence is grossly disproportionate to the crimes, and courts of this Circuit do not consider the matter further if they conclude that the sentence is

*Id.* (citing *Gaskins*, 825 P.2d at 35-36).  As a preliminary matter, Applicant contends that he is effectively serving life in prison without the possibility of parole because he is serving two consecutive life sentences and will likely "not mak[e] it to his alleged parole eligibility." Traverse at 10 [Docket No. 12].  As such, he claims he was entitled to an extended, rather than abbreviated proportionality review.  Applicant cites no authority for the proposition that the collective length of his two sentences should factor into whether a review is abbreviated or extended.  In addition, as noted earlier, Applicant did not present to the state appellate court the question of the impact of the sentence for Conviction 2 on the sentence for Conviction 1, and the Court declines to consider that impact for the first time here.

Applicant cites *Close v. People*, 48 P.3d 528, 536 (Colo. 2002) for the general proposition that an extended proportionality review was required.  However, the Court notes that the *Close* court held that "[r]eviewing courts must only complete an abbreviated proportionality review.  If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality does a reviewing court need to engage in an extended proportionality review." *Close*, 48 P.3d at 536 (citing *Harmelin*, 501 U.S. at 1004-05).  Applicant is mistaken that the Colorado Court of Appeals erred by not conducting an extended proportionality review based upon *Close* or, indeed, federal court precedent. *See Harmelin*, 501 U.S. at 1004-05.  If, as the Colorado Court of Appeals held, the life sentence for Conviction 1 was not grossly disproportionate, the court was not required to go beyond an abbreviated review.

_____

proportionate.  *See United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006).

Here, the sole question is whether Applicant's life sentence resulting from Conviction 1 was grossly disproportionate to his crimes. *See Hawkins*, 200 F.3d at 1282; *see also Harmelin*, 501 U.S. at 1001 (Kennedy, J. concurring) (noting that only grossly disproportionate sentences violate the Eighth Amendment). The Colorado Court of Appeals held that Applicant's sentence was not disproportionate. *Lindsey IV*, No. 93CA1545, slip op. at 6-7. For the reasons discussed below, this Court agrees that Applicant's sentence does not rise to the level of an Eighth Amendment violation.

Regarding Conviction 1, Applicant was sentenced to life in prison with the possibility of parole after forty years. His crimes were attempted sexual assault and burglary of a home. In addition, the sentencing court also considered Applicant's two other prior burglary convictions which gave rise to Applicant's conviction as an habitual criminal. Both attempted sexual assault and burglary are serious offenses. *Alvarez*, 797 P.2d at 42; *People v. Hernandez*, 686 P.2d 1325, 1330 (Colo 1994); *see also Hawkins*, 200 F.3d at 1284 (noting that 100-year sentence for sexual assaults and home invasion, which were grave offenses, was not disproportionate); *Solem*, 463 U.S. at 292-93 (noting that the gravity of an offense is determined by considering such factors as the harm to society, whether the crime involved violence, the magnitude of the offense, the offender's culpability and motive, etc.). Moreover, evidence adduced at the trial implicated Applicant in the consummated sexual assault of the same victim several months earlier, although he was not charged with this crime.

The Tenth Circuit has noted that it is only the rare case where the "threshold comparison of the crime committed and the sentence imposed leads to an inference of

gross disproportionality." *Hawkins*, 200 F.3d at 1282 (citation omitted). Consequently, this Circuit has found that sentences even more serious than the one at issue here were not grossly disproportionate to arguably less grave offenses. *See Gurule*, 461 F.3d at 1247 (noting that life sentence without parole for forty-five years was not disproportionate for a defendant convicted of multiple robberies and use of firearms).

Indeed, considering the crime and punishment at issue in *Harmelin*, namely a life sentence without parole for a first-time offender in possession of 672 grams of cocaine, "it may be wondered if a life sentence would ever be grossly disproportionate for a serious violent felony" like the sexual assault and burglaries at issue here. *See id.*; *Hawkins*, 200 F.3d at 1284. In addition, given Applicant's valid adjudication as an habitual criminal, see *supra* Part III.B, the Court is not inclined to view this as a rare case where disproportionality could be implicated. "[E]ven in *Solem*, which . . . has been narrowed considerably, the Court made it clear that although the proportionality issue is to be focused on the crime for which the challenged sentence has been imposed, courts must also be mindful that 'legislatures may punish recidivists more severely than first-time offenders.'" *Id.* at 1247-48 (quoting *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999)).

To summarize, the Colorado Court of Appeals' decision was not contrary to federal law or objectively unreasonable. Applicant was not constitutionally entitled to an extended proportionality review. Moreover, the life sentence imposed pursuant to Conviction 1 was not grossly disproportionate to Applicant's crimes. As such, Applicant has failed to establish an Eighth Amendment violation, and Claim IV should be denied.

E. Claim V – Ineffective Assistance of Counsel (Conviction 1).

Applicant argues that his Conviction 1 trial counsel was ineffective due to his failure to devote substantial resources to attack the admissibility of the DNA evidence used against Applicant. Particularly, he claims that counsel erred by failing to launch a full-scale challenge to the DNA evidence similar to the one used in the trial resulting in Conviction 2. Traverse at 11-14 [Docket No. 12]. Respondents concede that a comprehensive attack of the DNA evidence was not utilized, but argue that this decision was neither in error nor was Applicant prejudiced by it. Answer Brief at 23-26 [Docket No. 8].

As a preliminary matter, it is helpful to discuss the differences between the two trials. In the trial resulting in Conviction 1, DNA evidence was used only to link Applicant to the January 1988 sexual assault of Victim 1. He was not charged with that assault and, rather, was charged with the attempted sexual assault of the same victim that occurred several months later. During the second sexual assault of Victim 1, Applicant referenced his earlier assault as he was talking to the victim. Record vol. 3 at 253. Unlike the January 1988 sexual assault, however, Victim 1's neighbor interrupted Applicant before the assault was complete, and Applicant fled in his car.[11] *Id.* at 257-58, 272, 283, 287. Several eye witnesses were able to identify Applicant fleeing the scene, and Applicant was arrested near Victim 1's home not long thereafter. *Id.* at 274. In Applicant's car, police found a shower cap and a weapon, both of which had been described by Victim 1. *See*

_____

[11] Given this interruption, Applicant did not leave any DNA evidence on the scene of his second attack of Victim 1.

*Lindsey V*, No. 02CA0541, slip op. at 3; Record vol. 3 at 326. Based on the weight of this evidence, Applicant was convicted of the attempted sexual assault of Victim 1.

By contrast, the evidence against Applicant at the trial resulting in Conviction 2 was largely circumstantial, and the only direct evidence linking Applicant to the February 1988 sexual assault of Victim 2 was the DNA evidence. *See Lindsey II*, 868 P.2d at 1088. Because the financial resources of the state public defenders' office were limited, a tactical decision was made not to challenge the admission of the DNA evidence at the trial resulting in Conviction 1, and instead to expend the office's resources challenging the admission of the DNA evidence at the trial resulting in Conviction 2, particularly given the lack of other evidence implicating Applicant regarding the latter offenses. *See Lindsey III*, 892 P.2d at 283-84 & n.5 (noting also that "the DNA evidence was not attacked at the first trial because evidence of Lindsey's guilty apart from the DNA evidence existed"). Despite counsel's significant efforts to challenge the reliability of the DNA evidence at the trial resulting to Conviction 2, the evidence was admitted against Applicant.

It is pursuant to this backdrop that the Court considers whether Applicant's trial counsel was ineffective due to his failure to challenge the admission of the DNA evidence at the trial resulting in Conviction 1. The standard for determining whether Applicant's trial counsel was ineffective is enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Applicant must show that his counsel's performance was deficient, and that he was prejudiced by it. *Id.* at 688-92; *Trice*, 196 F.3d at 1159-60. The Court judges "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. But "[a]bsent some effect

27

of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

In his request for postconviction relief, as in his Application, Applicant argued that his trial counsel labored under a conflict of interest given the limited resources of his office such that he suffered prejudice from counsel's decision not to challenge the DNA evidence. Relying almost exclusively on whether Applicant had proven he was prejudiced by this decision, the appellate court noted that "the overwhelming evidence of guilt in the first trial, apart from DNA evidence, that would defeat the conflict of interest claim also shows a lack of prejudice under the second prong of *Strickland.*" *Lindsey V*, No. 02CA0541, slip op. at 3. The Colorado Court of Appeals further noted:

> In contrast to this direct evidence [implicating Applicant], the People used DNA evidence in the first trial only to connect [Applicant] to an earlier uncharged assault on the same victim. Thus, the presence of significant non-DNA evidence establishing [Applicant's] guilt supports both the decision of the public defender's office not to obtain expert testimony challenging DNA evidence in the first trial and the postconviction court's decision that lack of this evidence did not prejudice the defense.

*Id.* at 3-4.

This Court agrees. From the record in this case, it appears that there was ample other evidence connecting Applicant to the attempted sexual assault of Victim 1 apart from the DNA evidence linking him to the uncharged January 1988 sexual assault. *Cf. Trice*, 196 F.3d at 1163 (holding that even if counsel had sought to admit exculpatory evidence, Applicant could not show the result would have been different because of the ample other evidence against him); *Houchin*, 107 F.3d at 1472 (noting that even if counsel's performance was deficient, where significant other evidence of Applicant's guilt existed,

there was no reversible error). Applicant does not challenge the Colorado Court of Appeals' factual findings regarding sufficient other evidence of his guilt. Moreover, given trial counsel's unsuccessful challenge of the admissibility of similar DNA evidence in the trial resulting in Conviction 2, and considering that the admission of that evidence did not violate Applicant's constitutional rights, see *supra* Part III.C, Applicant has failed to prove that a similar attack would have led to a different result here.

To summarize, the Colorado Court of Appeals' decision was not contrary to federal law or objectively unreasonable. Applicant has failed to show that his trial counsel's performance was deficient or that he was prejudiced by counsel's decision not to challenge the admissibility of the DNA evidence implicating Applicant in the uncharged sexual assault. As such, Applicant has not established a Sixth Amendment violation, and Claim V should be dismissed.

## IV. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief under 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

Pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation

by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985),

and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't*

*of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13

(10th Cir. 1996).  A party's objections to this Recommendation must be both timely and

specific to preserve an issue for *de novo* review by the district court or for appellate review.

*United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 7, 2008

                                        BY THE COURT:

                                         s/ Kristen L. Mix
                                        U.S. Magistrate Judge
                                        Kristen L. Mix